## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONSERVATION FORCE,                                )<br><br>Plaintiff,                                )<br><br>v.                                )<br><br>SALLY JEWELL, *in her official capacity*                 )<br>*as* Secretary of the U.S. Department of the          )<br>Interior, *et al.*,                                )<br><br>Defendants.                                )<br>                                ) | Civil Action No. 12-cv-1665 (KBJ) |

## <u>MEMORANDUM OPINION</u>

A threshold requirement for a plaintiff who seeks to recover attorneys' fees for claims brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, is to demonstrate that he has "substantially prevailed" in the underlying litigation in a manner that makes him eligible for fees.  5 U.S.C. § 552(a)(4)(E).  Before this Court at present is an attorneys' fees motion that Plaintiff Conservation Force, a nonprofit wildlife-conservation foundation, has brought based on a FOIA lawsuit that the organization filed in 2012 against the Department of the Interior, the United States Fish and Wildlife Service ("FWS"), and high-level executive officers of those agencies in their official capacities (collectively "Defendants").  As explained fully below, this Court has concluded that Conservation Force has not made the required eligibility showing in support of its motion for attorneys' fees, despite the fact that Defendants provided Conservation Force many of the desired documents soon after the suit's initiation, and Defendants also revamped the descriptions of redacted information in the

agency's *Vaughn* Index during the course of the litigation pursuant to an order of the

Court.[1]  Consequently, and as set forth in the separate order that accompanies this

Memorandum Opinion, Conservation Force's motion for attorneys' fees and costs will

be **DENIED**.

## I.     **BACKGROUND**

### A.     **The *Wood Bison* Cases**

This Court sketched out much of the relevant background at length in the

Memorandum Opinion that it issued in this case on September 2, 2014, *see*

*Conservation Force v. Jewell*, 66 F. Supp. 3d 46, 52–54 (D.D.C. 2014) ("*Wood Bison*

*III*"); therefore, only broad strokes are necessary here.

Canada permits limited hunting of the Canadian wood bison—a species that has

been of concern to environmentalists for some time, *see id.* at 53—through the sale of

"wood bison hunts[,]" *Conservation Force v. Salazar*, 715 F. Supp. 2d 99, 101 (D.D.C.

2010) ("*Wood Bison I*").  In the early 2000s, four American hunters purchased hunts

and successfully hunted wood bison, *see id.*, and with the assistance of Conservation

Force, each of these individuals submitted applications to the FWS for permission to

import their wood bison trophies into the United States.  *See id.*  Conservation Force

and the hunters sued the FWS in this District in 2009, after what they considered to be

an unreasonably delayed response; their complaint alleged that the FWS's failure to

respond to their important request violated several statutory and constitutional

provisions.  *See id.* at 102–08.  The FWS then denied the import applications while the

---

[1] A "*Vaughn* index is a document that correlates all withholdings with specific FOIA exemptions and the agency's specific nondisclosure justifications." *Pub. Citizen v. U.S. Dep't of Health and Human Servs.*, 66 F. Supp. 3d 196, 200 n.2 (D.D.C. 2014) (citing *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973)).

lawsuit was pending, and the court dismissed the plaintiffs' action as moot. *See id.* at 105–07.

Undaunted, Conservation Force sued the FWS again, this time alleging that the agency's denial of the request to import the hunting trophies violated various statutory provisions. *See Conservation Force v. Salazar*, 851 F. Supp. 2d 39, 42 (D.D.C. 2012) ("*Wood Bison II*"). This suit asserted, in essence, that the denial was based on impermissible policy reasons (as opposed to good science), *see, e.g.*, *id.* at 45–46, and the court ultimately agreed with Conservation Force's argument that the administrative record could not support the agency's decision, remanding the applications to FWS for reconsideration, *see id.* at 52–54.

The FOIA lawsuit that is the basis for the instant motion for attorneys' fees arose out of Conservation Force's interest in discovering the true rationale for the initial import denials. *See Wood Bison III*, 66 F. Supp. 3d at 54. Apparently, as part of the administrative record in *Wood Bison II*, Conservation Force had received documents that appeared to contain the reason that a particular government attorney had recommended that the permits be denied, but the "specific rationale for recommending denial of the permits" had been redacted. *Id.* at 53. Consequently, on April 16, 2012, Conservation Force submitted a FOIA request to the FWS, requesting "any and all documents, correspondence, and notes of meetings between the [FWS] and the Office of the Solicitor regarding import permits for Canadian wood bison trophies since 2000 including any documents excluded as purportedly privileged from the administrative record in *Wood Bison II*." *Id.* (internal quotation marks and citations omitted).

The FWS acknowledged receipt of the FOIA request on April 17, 2012. (*See*

Pl.'s Mem. in Supp. of Pl.'s Mot. for Atty.'s Fees and Costs ("Pl.'s Mem."), ECF No. 37-1, at 3.)[2]  The agency next communicated with Conservation Force on August 9, 2012; it sent a letter to explain that, because the "request consisted primarily of documents that were previously identified as privileged" during *Wood Bison II*, the FWS had forwarded the document request to the FOIA Officer for the Department of the Interior Solicitor's Office for his review.  (Second Decl. of Timothy Van Norman ("Second Van Norman Decl."), ECF No. 12-1, ¶¶ 2–3; *see also* Pl.'s Mem. at 3–4.) When Conservation Force had still received no response by October 4, 2012—and had apparently unsuccessfully tried to contact certain individuals identified as contact persons in the August 9 letter (*see* Pl.'s Mem. at 4)—it filed a lawsuit in this Court, alleging that the FWS had failed to comply with the FOIA's requirement that document-production determinations be made expeditiously, *see* 5 U.S.C. § 552(a)(6).  (*See* Compl., ECF No. 1, ¶¶ 42–46.)  Notably, with respect to the relief sought, Conservation Force's complaint specifically requested that the Court (1) declare that the government violated the FOIA when it failed to respond to the April 2012 request "in accordance with the statutory deadline"; (2) declare that the government was continuing to violate the FOIA for the same reasons; (3) issue an injunction ordering the government to provide all records described in the April 2012 FOIA request that could not lawfully be withheld; and (4) grant Plaintiff costs of litigation.  (*See* Compl. at 12–13.)

Subsequently, in November of 2012, the FWS and the Department of the Interior jointly determined that the August referral to the Department of the Interior had been a mistake and that the FWS should resume processing the documents.  (*See* Second Van

---

[2] Page-number citations to the documents the parties have filed refer to the page numbers that the Court's electronic filing system automatically assigns.

Norman Decl. ¶ 6.)  Around the same time, Defendants asked the Court for a ten-week stay of the proceedings to permit the agency to search for and review responsive documents.  (*See* Defs.' Mot. to Stay, ECF No. 9, at 1–2.)  Conservation Force opposed the stay motion on the grounds that Defendants had failed to establish the "exceptional circumstances" the FOIA requires to justify an administrative stay, *see* 5 U.S.C. § 552(a)(6)(C).  (*See generally* Pl.'s Opp'n to Defs.' Mot. to Stay, ECF No. 10.)  But then, on December 12, 2012, and before the Court ruled on the stay request, Defendants released 1,026 pages of unredacted responsive documents and simultaneously reiterated that it expected to complete its review—including possible redactions or withholdings—of all remaining responsive material by January 31, 2013.  (*See* Defs.' Reply to Pl.'s Opp'n to Stay, ECF No. 12, at 1.)

On January 3, 2013, this Court addressed the pending stay request by ordering Defendants to "show cause in writing why the requested extension of time should be granted" (*see* Order ("Show-Cause Order"), ECF No. 13, at 1), and gave Defendants until January 10 to better explain why the Court should grant an extension to process the FOIA request.  (*See id.* at 4.)  Shortly thereafter, on January 9, 2013, the FWS provided its final release of documents—577 pages of partially redacted responsive records—and withdrew its stay request as moot.  (*See generally* Defs.' Resp. to Show-Cause Order, ECF No. 14.)

The parties then proceeded to clash on the redaction front.  Defendants filed a motion for summary judgment, a supplemental declaration from an FWS official, and a *Vaughn* Index as proof that the FOIA's enumerated exceptions supported the withholding of certain information.  *See Wood Bison III*, 66 F. Supp. 3d at 54.

Predictably, Conservation Force disagreed, offering its own motion for summary judgment that asserted that Defendants' materials "f[e]ll woefully short of the level of specificity required to justify withholdings under [the FOIA exemptions claimed]." *See id.* at 54, 58.

This Court resolved the redaction dispute, in part, on September 2, 2014, by concluding that Defendants were entitled to summary judgment on the subset of redactions that were based on the FOIA's attorney-client-privilege and personal-information exemptions; the Court, however, denied without prejudice both parties' cross-motions for summary judgment with respect to the withholdings that were based on the work-product and deliberative-process privileges. *See id.* at 62, 66–68. The Court determined that Defendants had provided insufficient evidence to permit a ruling as to whether or not those claimed exemptions actually applied, and as a result, it permitted Defendants to choose, on the one hand, to file "a supplemental Vaughn Index, affidavit, or declaration that provides the necessary additional information regarding the redacted documents[,]" or, on the other, to release the challenged withheld content. *Id.* at 68; (*see also* Order ("September 2 Order"), ECF No. 26, at 1–2). Defendants opted to file a supplemental *Vaughn* Index and affidavit on October 2, 2014 (*see* Defs.' Notice of Filing, ECF No. 30), and orally renewed their motion for summary judgment at a status conference held on April 7, 2015. At that conference, Conservation Force "conceded that the Defendants' revised *Vaughn* index [was] sufficient to address the concerns the Court expressed in [*Wood Bison III's* Memorandum Opinion]." (Order of April 7, 2015, ECF No. 36, at 2.) Accordingly, the Court granted Defendants summary judgment on the remaining redactions and dismissed Conservation Force's initial

complaint.  (*See id.*)

### B.  The Instant Motion For Attorneys' Fees

On April 20, 2015, Conservation Force filed the instant motion for reasonable

attorneys' fees and costs.  (*See generally* Pl.'s Mot. for Atty.'s Fees and Costs ("Pl.'s

Mot."), ECF No. 37; Pl.'s Mem.; Defs.' Opp'n to Pl.'s Mot. ("Def.'s Opp'n"), ECF No.

41; Pl.'s Reply in Supp. of Pl.'s Mot. ("Pl.'s Reply"), ECF No. 44.)  In the motion,

Conservation Force maintains that initiating the *Wood Bison III* litigation caused the

FWS to "change its position and provide some of the relief sought by the suit, [*i.e.*,]

release of records related to wood bison import permits."  (Pl.'s Mem. at 10.)

Conservation Force also asserts that the Court's opinion and order issued September 2,

2014 "grant[ed] Conservation Force much of the substantive relief that it . . . requested"

in its initial complaint.  (*Id.* at 11.)  In their opposition to the fee motion, Defendants

argue that Conservation Force is ineligible for any fees under the terms of the

applicable statute, and that even if it is deemed eligible, Conservation Force should

only receive a portion of the fees incurred in the matter because much of the litigation

was spent litigating issues on which Conservation Force did not prevail.  (*See* Defs.'

Opp'n at 4–5.)

## II.  MOTIONS FOR ATTORNEYS' FEES IN FOIA CASES

In section 552(a)(4)(E) of Title 5 of the United States Code—which is a

provision of the FOIA statute—Congress has specified that "[t]he court may assess

against the United States reasonable attorney fees and other litigation costs reasonably

incurred in any case under this section in which the complainant has substantially

prevailed."  5 U.S.C. § 552(a)(4)(E)(i).  The statute does not authorize courts to assess

what it means to "prevail" (substantially or otherwise) in a FOIA case in the abstract;

rather, the statute further provides:

> (ii) For purposes of this subparagraph, a complainant has substantially prevailed if the complainant has obtained relief through either—
>
> (I)     a judicial order, or an enforceable written agreement or consent decree; or
>
> (II)    a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial.

5 U.S.C. § 552(a)(4)(E)(ii).  In *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521 (D.C. Cir. 2011), the D.C. Circuit made clear that the language Congress uses to authorize attorneys' fees in FOIA cases "naturally divides the attorney-fee inquiry into two prongs, which our case law has long described as fee 'eligibility' and fee 'entitlement.'"  *Id.* at 524 (quoting *Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 470 F.3d 363, 368–69 (D.C. Cir. 2006)).  It further explained: "[t]he eligibility prong asks whether a plaintiff has 'substantially prevailed' and thus 'may' receive fees[,]" *id.* (citation omitted), and "[i]f so, the court proceeds to the entitlement prong and considers a variety of factors to determine whether the plaintiff *should* receive fees[,]" *id.* (emphasis in original) (citation omitted).

To undertake the requisite eligibility analysis, the court must determine whether "the complainant has substantially prevailed" in the FOIA litigation insofar as he has "obtained relief through" one of the two ways set forth above: either (1) an order of the court or enforceable agreement of the parties, or (2) a "voluntary or unilateral change in position by the agency," assuming the plaintiff's claim is not insubstantial.  5 U.S.C. § 552(a)(4)(E)(i)–(ii).  With respect to the first manner of demonstrating eligibility for fees—this Court will call it the "court-order" method of establishing eligibility, for short—the plaintiff must identify a court order that "constitutes judicial relief on the merits resulting in a court-ordered change in the legal relationship between the plaintiff

and the defendant." *People for the Ethical Treatment of Animals v. Nat'l Insts. of Health*, No. 10-1818, 2015 WL 5326103, at *4 (D.D.C. Sept. 11, 2015) (quoting *Campaign for Responsible Transplantation v. FDA*, 511 F.3d 187, 194 (D.C. Cir. 2007)) (internal quotation marks omitted); *see also Campaign for Responsible Transplantation*, 511 F.3d at 194. Such order must have "require[d] a party 'to do what the law required—something that it had theretofore been unwilling to do.'" *People for the Ethical Treatment of Animals*, 2015 WL 5326103, at *4 (quoting *Campaign for Responsible Transplantation*, 511 F.3d at 196).

The second method of establishing that the party seeking fees substantially prevailed in the FOIA action, *see* 5 U.S.C. § 552(a)(4)(E)(ii)(II), is ordinarily called the "catalyst" method, and it permits the plaintiff to claim eligibility even without a favorable court judgment, if "the litigation substantially caused the requested records to be released." *ACLU v. U.S. Dep't of Homeland Sec.*, 810 F. Supp. 2d 267, 274 (D.D.C. 2011) (quoting *N.Y.C. Apparel F.Z.E. v. U.S. Customs & Border Prot. Bureau*, 563 F. Supp. 2d 217, 221 (D.D.C. 2008)) (internal quotation marks omitted). However, it is clear beyond cavil that, because "[r]ecovery under the catalyst [method] . . . turns on causation[,]" *Citizens for Responsibility & Ethics in Wash. v. DOJ*, 83 F. Supp. 3d 297, 303 (D.D.C. 2015) (citing, *inter alia*, *Cox v. DOJ*, 601 F.2d 1, 6 (D.C. Cir. 1979)), "[t]he 'mere filing of the complaint and subsequent release of documents,'" without more, will *not* suffice to show a causal nexus, *id.* (quoting *Weisberg v. DOJ*, 745 F.2d 1476, 1496 (D.C. Cir. 1984)). Moreover, and accordingly, in order to "prevent plaintiffs from being the beneficiaries of purely extrinsic factors, courts are directed to look at the circumstances surrounding disclosure." *Id.* Ultimately, it is the plaintiff's

burden to show that the catalyst pathway applies, *see Dorsen v. SEC*, 15 F. Supp. 3d

112, 118 (D.D.C. 2014); if nothing else, this at least means that equipoise on the

question of causation will not do, *see Pub. Citizen Health Research Grp. v. Young*, 909

F.2d 546, 550 (D.C. Cir. 1990) (holding, in the context of an analogous fee statute's

catalyst provision, that "the claimant must show that it is more probable than not that

the government would not have performed the desired act absent the lawsuit" (citations

omitted)).

 As mentioned, and significantly for present purposes, a plaintiff must "*obtain*[]

*relief* through" either the court-order or catalyst methods in order to be eligible for

attorneys' fees. *See* 5 U.S.C. § 552(a)(4)(E)(ii) (emphasis added).  The FOIA defines

"relief" broadly as, among other things, the "taking of . . . action on the application of

or petition of, and beneficial to, a person[,]" 5 U.S.C. § 551(11), and in this regard, the

statute appears merely to have imported the ordinary meaning of "relief" into the

agency context.  *See* Black's Law Dictionary 1482 (10th ed. 2014) (defining "relief," as

relevant here, as the "redress or benefit . . . that a party asks of a court").

 A FOIA plaintiff who demonstrates that he has obtained relief through either of

the two statutorily prescribed methods discussed above has "substantially prevailed"

within the meaning of the statute, and is thus eligible to recover fees; he must then

proceed to show an entitlement to fees under a "multi-factor standard" that serves to

guide the court's decision making regarding whether or not it should exercise its

discretion to grant fees to an eligible plaintiff.  *Dorsen*, 15 F. Supp. 3d at 117 (citation

omitted).  Under this framework, courts consider "(1) the public benefit derived from

the case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's

interest in the records; and (4) the reasonableness of the agency's withholding of the requested documents." *Id.* (internal quotation marks and citation omitted).  No factor is dispositive, and "sifting of th[e] criteria over the facts of a case is a matter of district court discretion." *Id.* (internal quotation marks and citation omitted).  Moreover, courts have explained that the various factors are merely tools to aid in the pursuit of the "two separate and distinct" overriding objectives of the FOIA: "to encourage [FOIA] suits that benefit the public interest, and to compensat[e] for enduring an agency's unreasonable obduracy in refusing to comply with the [FOIA] requirements." *ACLU*, 810 F. Supp. 2d at 276 (alterations in original) (internal quotation marks and citation omitted).  Thus, the touchstone is always "whether an award of attorney fees is necessary to implement the FOIA." *Davy v. CIA*, 550 F.3d 1155, 1158 (D.C. Cir. 2008) (citation omitted).

Finally, it is important to note that, even after finding eligibility and entitlement, district courts retain the discretion to modify a fee award based on the reasonableness of the request and the particular facts of the case.  *See Judicial Watch*, 470 F.3d at 369. Thus, once a plaintiff successfully surmounts the eligibility hurdle, the fee inquiry becomes highly case specific.  *See, e.g.*, *Judicial Watch, Inc. v. DOJ*, 878 F. Supp. 2d 225, 238–39 (D.D.C. 2012) (examining whether the fees that were incurred were reasonable, even after the plaintiff had demonstrated eligibility and entitlement).

## III.   DISCUSSION

Conservation Force asserts that it is eligible for, and is entitled to recover, the attorneys' fees and costs that it incurred in litigating *Wood Bison III* (the FOIA action) against Defendants.  In support of its argument for fees, Conservation Force points, first, to this Court's Order denying without prejudice Defendants' motion for summary

judgment in part and permitting the submission of a revised *Vaughn* Index (*see* September 2 Order at 1–2), and second, to what it claims is the fact that the lawsuit prodded the agency into action.  (*See* Pl.'s Mem. at 10–11.)   However, for the reasons explained below, this Court concludes that this is not a "case in which the complainant has substantially prevailed[,]" 5 U.S.C. § 552(a)(4)(E)(ii), because Conservation Force has not demonstrated that it "obtained relief through either" a court order or a "voluntary or unilateral change in position by the agency," *id.* § 552(a)(4)(E)(ii)(I)–(II).  Consequently, the pending motion for attorneys' fees will be denied.

### A.   Conservation Force Did Not Obtain Relief Through A Court Order

As mentioned, success via the court-order method requires the movant to identify an order of the court that "constitutes judicial relief on the merits" because it resulted in "a 'court-ordered change in the legal relationship between the plaintiff and the defendant.'"  *People for the Ethical Treatment of Animals*, 2015 WL 5326103, at *4 (quoting *Campaign for Responsible Transplantation*, 511 F.3d at 194).  Courts assessing eligibility under this standard routinely evaluate the relief that the complaint requests in light of what the court actually ordered—and have often found that, because FOIA plaintiffs ordinarily request relief in the form of a court order requiring production of the documents themselves, administrative orders that a court might issue to aid in its determination of whether the documents have been properly withheld (*e.g.*, orders for *Vaughn* Indices or status reports) do not give rise to a finding of eligibility for attorneys' fees.  *See, e.g.*, *Campaign for Responsible Transplantation*, 511 F.3d at 196 (explaining the holding in a previous D.C. Circuit case by pointing out that the district-court order in question—an order to conduct a search—"was not the relief on the merits that plaintiff sought" where what plaintiff sought was "the release of

documents"). Put another way, a court order that requires the government to produce a "*Vaughn* index, without more, does not constitute court-ordered relief for a plaintiff on the merits of its FOIA claim" because it "does not change the legal relationship between the plaintiff and defendant." *Id.* at 196 (citation omitted); *see also Summers v. DOJ*, 569 F.3d 500, 505 (D.C. Cir. 2009) (reasoning that court-ordered status reports regarding certain government "voluntary disclosures" did not effect "a court-ordered change in the legal relationship" between the parties, because the government could "refuse[] to disclose a single document or datum" and still not be in violation of the court's order (internal quotation marks and citation omitted)); *Barnard v. Dept. of Homeland Sec.*, 656 F. Supp. 2d 91, 98–99 (D.D.C. 2009) (holding that a court order requiring defendant *either* to release records *or* to prepare a *Vaughn* Index was not judicial relief on the merits, for the same reasons (citing *Summers*, 569 F.3d at 505)).

These holdings foreclose Conservation Force's characterization of this Court's September 2nd order as judicial relief on the merits. As explained, Conservation Force's complaint asked this Court to (1) issue an injunction forcing the government to release certain documents and (2) declare that Defendants had violated, and were continuing to violate, the FOIA's statutory time limits. (*See* Compl. at 12–13; *see also supra* Part I.A.) The Court's order of September 2, 2014, included no such declaration, nor did it direct a document release. Instead, the Court merely denied the government's motion for summary judgment in part and without prejudice, on the grounds that some of the claimed exemptions were insufficiently explained to support summary judgment, and the Court permitted Defendants to choose between releasing the content allegedly protected by the insufficiently explained exemptions or submitting "a supplemental

Vaughn Index and/or affidavits or declarations that comply with their obligations under [FOIA]." (September 2 Order at 1.) Therefore, just as in *Summers*, Defendants would not have violated the Court's order if they had refused to produce any documents at all, *see* 569 F.3d at 505, as long as they produced a revised *Vaughn* Index or equivalent supplement to their claimed exemptions.[3] Moreover, if a court order to produce a *Vaughn* Index, without more, "does not constitute court-ordered relief for a plaintiff on the merits of its FOIA claim," *Campaign for Responsible Transplantation*, 511 F.3d at 195 (citation omitted), then neither does a court's reminder to a defendant that it must *either* justify its exemptions sufficiently *or* release the requested documents.

In response to all this, Conservation Force makes only the bald statement that the September 2nd order "[wa]s a production order." (Pl.'s Reply at 6 (citing *Elec. Privacy Info. Ctr. v. U.S. Dep't of Homeland Sec.*, 999 F. Supp. 2d 61, 65, 67 (D.D.C. 2013)).) Merely saying this does not make it so. And the cited *Electronic Privacy* case provides no support for this *ipse dixit* either, because it is clear that the court in that case was referencing the defendant's revised *Vaughn* Index in the context of a discussion about plaintiff's eligibility under the catalyst method, not the court-order analysis that is presently pertinent. *See Elec. Privacy Info. Ctr.*, 999 F. Supp. 2d at 65, 67. As this Court reads it, the *Electronic Privacy* case says nothing contrary to the above analysis regarding court-ordered relief; consequently, this Court concludes that Conservation Force has failed to show that it is eligible for attorneys' fees because it obtained relief through a court order under 5 U.S.C. § 552(a)(4)(E)(ii)(I).[4]

---

[3] Indeed, as noted in Part I.A, Defendants did not disclose any documents after or pursuant to the Court's order; instead, they chose to update their *Vaughn* Index, and as Conservation Force subsequently conceded, that updated *Vaughn* Index passed muster.

[4] In its reply brief, Conservation Force argues for the first time that two orders the Court issued in

### B. Conservation Force's Catalyst Arguments Are Insufficient To Demonstrate Eligibility

Because this Court has concluded that Conservation Force is not entitled to fees on the basis of there being any court-ordered relief on the merits, Conservation Force can only show eligibility through the catalyst method.   To recap, the catalyst analysis is all about causation, and it is Conservation Force's burden to show that the necessary causal nexus exists.   *See Dorsen*, 15 F. Supp. 3d at 118.   Moreover, because "the mere filing of the complaint and the subsequent release of the documents is insufficient to establish causation[,]" *id.* (quoting *Weisberg*, 745 F.2d at 1496)), "vague assertions of *post hoc, ergo propter hoc* are insufficient[,]" *Citizens for Responsibility and Ethics*, 83 F. Supp. 3d at 297 n.5 (citing *Pub. Law Educ. Inst. v. DOJ*, 744 F.2d 181, 183 (D.C. Cir. 1984)); *see also* Black's Law Dictionary 1355 (10th ed. 2014) (defining *post hoc ergo propter hoc* as the "logical fallacy of assuming that a causal relationship exists when acts or events are merely sequential").   After all, if it was "unavoidable delay accompanied by due diligence in the administrative process" that caused the agency's failure to respond in a timely fashion to the initial FOIA request, and not the "threat of an adverse court order," then "it cannot be said that the complainant substantially prevailed in [its] suit."   *Calypso Cargo Ltd. v. U.S. Coast Guard*, 850 F. Supp. 2d 1, 4 (D.D.C. 2011) (alteration in original) (quoting *Church of Scientology of Cal. v. Harris*, 653 F.2d 584, 588 (D.C. Cir. 1981)); *see also Short v. U.S. Army Corps of Engr's*, 613 F. Supp. 2d 103, 106 (D.D.C. 2009) ("The causation requirement is missing when

---

2013—the January 3rd order to show cause why Defendants deserved a further extension of time to respond to the FOIA request and the February 19th minute order entering a briefing schedule—were orders satisfying the court-order test.   But there is no colorable argument that Conservation Force obtained relief through those orders.   And, in any event, new arguments made in a reply brief are forfeited, *see Harrison v. Office of the Architect of the Capitol*, 68 F. Supp. 3d 174, 183 (D.D.C. 2014), so this Court will not exercise its discretion to consider them here.

disclosure results not from the suit but from delayed administrative processing.").

This principle makes considerable sense, and it compels the outcome here. The FOIA's fee provision represents an intentional deviation from the usual rule that each party pays its own attorneys' fees, *see Union of Needletrades, Indus. & Textile Emps., AFL-CIO, CLC v. U.S. I.N.S.*, 336 F.3d 200, 203 (2d Cir. 2003), and Congress directed that fees may be awarded with respect to FOIA litigation to incentivize lawsuits that "facilitate citizen access to the courts to vindicate their [FOIA] statutory rights[,]" *Benavides v. Bureau of Prisons*, 993 F.2d 257, 260 (D.C. Cir. 1993) (citation omitted). By contrast, no attorneys' fee reward is due if, as it turns out, recourse to the judicial system was unnecessary. Accordingly, when determining whether a party's action was the catalyst for the defendant's compliance with its FOIA obligations, courts "look at the circumstances surrounding disclosure[,]" *Citizens for Responsibility*, 83 F. Supp. 3d at 303, and consider factors "such as whether the agency made a good[-]faith effort to search out material and pass on whether it should be disclosed, whether the scope of request caused delay in disclosure, and whether the agency was burdened by other duties that delayed its response[,]" *ACLU*, 810 F. Supp. 2d at 274 (internal quotation marks and citation omitted) (alteration in original); *see also Dorsen*, 15 F. Supp. 3d at 118–19.

This inquiry is necessarily fact-specific. Claimants have succeeded where an agency admitted that, "[i]n the course of preparing [its] Motion for Summary Judgment[,]" it determined that the sought-after information could be released, months after "it had ceased its administrative processing and issued a final determination concerning [plaintiff's] FOIA request[.]" *Judicial Watch*, 878 F. Supp. 2d at 232–33

(first two alterations in original) (internal quotation marks and citation omitted).

Claimants were also found eligible for fees where, after the lawsuit was filed, the

agency reversed course on previous exemption assertions and provided the desired

documents, *see Dorsen*, 15 F. Supp. 3d at 115–16, 119–20.  Conversely, the court in

*Calypso Cargo* rejected a catalyst claim where the agency began diligently processing

the FOIA request before the lawsuit but, due to "the volume of the records[,]" released

the responsive documents some months after the complaint was filed.  850 F. Supp. 2d

at 4–6 (citation omitted) (citing cases).  So, too, there was no catalyst eligibility in

*Bigwood v. Defense Intelligence Agency*, where the agency labored under a significant

backlog of FOIA requests, and "expended a considerable amount of time and effort"

processing the plaintiff's broad request "prior to the filing of his lawsuit[.]" 770 F.

Supp. 2d 315, 321 (D.D.C. 2011); *see also Reinbold v. Evers*, 187 F.3d 348, 363 (4th

Cir. 1999) (rejecting the catalyst theory's applicability where unrebutted evidence

showed that the delay in responding to a request "was caused by a staffing shortage").

At bottom, then, the question is whether hard evidence—beyond temporal proximity—

supports the inference that the plaintiff's lawsuit caused the document release or other

requested relief.

Such evidence is entirely absent here.  Conservation Force filed the instant

lawsuit in October of 2012 in order to obtain certain documents and particular

declarations from the Court.  It never obtained the latter, and while it is true that

Defendants released some documents after Conservation Force filed the complaint as a

purely chronological matter, it is also clear beyond cavil that the catalyst method

requires more.  No averments or other facts in the instant record indicate that

Defendants only produced these documents *because* of Conservation Force's lawsuit or its necessary consequents, nor was there any about-face from an initial agency refusal here.  *Compare Dorsen*, 15 F. Supp. 3d at 115–16.  Indeed, if anything, Defendants' release of documents substantially resembles the types of unavoidable and unintentional delay noted above.

For example, the record reflects that the FWS has "a long standing policy of reviewing and processing requests in sequential order[,]"  (Third Decl. of Timothy Van Norman, ECF No. 14-1, ¶ 4), and also that, at all relevant times, the FWS had tasked only one individual with processing all FOIA requests, and that same person was also responsible for "oversee[ing] the weekly Federal Register notice publication announcing the receipt of all Endangered Species Act applications, handling . . . all legal file searches received by the office, and managing other data issues[,]"  (Second Van Norman Decl. ¶ 5).  This dynamic alone could be the cause of intractable delays in responding to FOIA requests.  But, here, there is more: the record demonstrates that after the agency began to move on Conservation Force's FOIA request—which indisputably occurred even before Conservation Force filed its lawsuit (*see id.* ¶¶ 2–3; *see also* Pl.'s Mem. at 3–4)—the review's momentum was thwarted when the agency apparently mistakenly decided to refer the request to the Department of the Interior for processing.  (*See* Second Van Norman Decl. ¶¶ 5–6.)  This decision took place in August of 2012, and was only reversed in November of 2012, approximately one month after Conservation Force's lawsuit was filed.  (*See id.* ¶¶ 4, 6.)  Thus, nothing here suggests an intransigence that only fell away in the face of litigation; to the contrary, these facts, which Conservation Force has not disputed, are at least susceptible to the

view that the agency was doing its best in a tough situation, and that the document

releases in December of 2012 and January of 2013 did not result from the lawsuit but,

instead, from the agency's best efforts finally bearing fruit.

Perhaps one could conceive of good arguments to support Conservation Force's

contention that the lawsuit prompted the agency to release the requested documents, but

as far as motions for attorneys' fees are concerned, plaintiffs bear this burden, and

Conservation Force has barely developed *any* catalyst argument, let alone a winning

one.  In its opening brief, Conservation Force offers only the unadorned assertion that

the lawsuit "served as [a] 'catalyst[,]'" which it then seeks to support with the lone

observation that "Defendants did not respond *at all* to Plaintiff's FOIA request until

*after* this lawsuit was filed."  (Pl.'s Mem. at 10 (emphasis in original).)  This is

precisely the type of conclusory *post hoc* argument that precedent rejects.  *See Dorsen*,

15 F. Supp. 3d at 118–19 (collecting cases).  Conservation Force elaborates marginally

in its reply brief—it asserts that, but for this litigation, Conservation Force would never

have received the *Vaughn* Index "or its valuable explanations" and that "Conservation

Force's opposition to Defendants' withholdings led to production of a revised *Vaughn*

index[.]"  (Pl.'s Reply at 6–7).  Even assuming *arguendo* that this argument is not

waived, it is certainly beside the point, because the FOIA statute does not make a

plaintiff eligible for attorneys' fees if it prevails on *any* dispute within a case, however

small.  Instead, plaintiffs are eligible only if they "obtain[] relief[,]" 5 U.S.C.

§ 552(a)(4)(E)(ii), and as explained above, "*Vaughn* indices are not properly understood

as relief on the merits for a FOIA plaintiff." *Campaign for Responsible*

*Transplantation*, 511 F.3d at 196; *see also Citizens for Responsibility*, 83 F. Supp. 3d at

305 (disagreeing that defendant's provision of "more fulsome explanations" for certain withholdings meant that plaintiff substantially prevailed, and explaining that a "party simply does not 'prevail' by failing to obtain the requested records" (citations omitted)).

This is also why the Court sees no reason to address the parties' extensive (and misguided) discussions regarding whether or not Conservation Force might be eligible to recover fees with respect to *particular pieces* of its work within the case overall.  For example, the government suggests that Conservation Force might be eligible "for attorneys' fees . . . associated with the complaint, proof of service and summons," but would not be eligible to recover fees with respect to the remainder of the work done by Conservation Force's attorneys, which post-dated the document productions of December 2012 and January 2013, and thus could not possibly have caused those productions.  (Defs.' Opp'n at 2 (asserting that Conservation Force is not eligible for "unsuccessful subsequent filings"); *id.* at 5; *see also* Pl.'s Reply at 7 (seeming to accept this piecemeal eligibility analysis).)  This approach to evaluating eligibility is not based in the statute, which clearly speaks about eligibility to receive attorneys' fees for *cases*, not particular pieces of work within a case.  *See* 5 U.S.C. § 552(a)(4)(E)(i) (stating that, if a complainant substantially prevails in a case, the court "may assess . . . reasonable attorney fees and other litigation costs reasonably incurred in [that] case").  Moreover, nothing in the statute suggests that the eligibility requirement is to be established based on a plaintiff's momentary successes on interstitial issues in a case where, as here, there is no evidence that the litigation itself elicited an event through which the plaintiff obtained relief.

Of course, the degree to which a plaintiff deserves to recover fees for particular pieces of work is not entirely irrelevant to an attorneys' fee motion; it may certainly factor into the court's ultimate determination of whether the entire amount of fees that the plaintiff claims to have incurred in the case is reasonable.  *See, e.g.*, *Elec. Priv. Info. Ctr.*, 999 F. Supp. 2d at 67 & n.1 (conducting the eligibility analysis and observing that "[w]hether [plaintiff] is entitled to all of its fees for work on issues for which it did not prevail is a different question"); *see also id.* at 75–76 (addressing the fee award's scope at the reasonableness stage and describing circumstances where partial failures within the lawsuit are grounds for a fee reduction).  But the initial eligibility analysis permits no such debate; rather, Congress was clear that, with respect to the case as a whole, if a FOIA plaintiff obtained the relief he requested (typically, the documents themselves) "through" either the court-order method or a change in agency position, he has "substantially prevailed" and thus "may" receive—*i.e.*, is eligible for— reasonable fees incurred in that case.  5 U.S.C. § 552(a)(4)(E).  And because Conservation Force has not made such a showing in the context of the instant case, this Court concludes that it is not eligible for an award of attorneys' fees and costs.

## IV.    CONCLUSION

Conservation Force has failed to demonstrate that it substantially prevailed in the underlying action—*i.e.*, that it received court-ordered relief on the merits of its FOIA claims or that it received relief from the agency that it would not have obtained but for the lawsuit.  Therefore, it is ineligible to recover fees, and its motion for attorneys' fees and costs must be **DENIED**.  A separate order providing accordingly will issue with this opinion.

DATE:  February 5, 2016                          *Ketanji Brown Jackson*
                                                 KETANJI BROWN JACKSON
                                                 United States District Judge